**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELICEO CRUZ-MARTINEZ,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, *in his Official Capacity, Secretary of the U.S. Department of Homeland Security*, *et al.*,<br><br>Respondents. | No. 4:26-CV-01166<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**SEPTEMBER 24, 2026**

# I. BACKGROUND

Petitioner Eliceo Cruz-Martinez ("Petitioner") has been detained by the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") since April 14, 2026. Petitioner, a citizen and native of Honduras, entered the United States of America approximately eight years ago.[1] On May 2, 2026, Petitioner filed a petition under 28 U.S.C. § 2241 seeking release from custody or a bond hearing, arguing that his continued detention without a bond hearing violated his constitutional rights.[2] The Court granted Petitioner's § 2241

1 Doc. 14-3, at 5. The Court notes that Respondents' documents show that Petitioner has been in the United States for five years as opposed to the eight-year period that Petitioner argues. (Doc. 5-2, at 2-3). The Court defers to the eight-year term length that the immigration judge cited in its bond hearing determination. Doc. 14-3, at 5.

2 Doc. 1.

petition on May 27, 2026, ordering Respondents to provide Petitioner with a bond hearing or, alternatively, to release Petitioner on his own recognizance.[3] The Court also clarified that, should Petitioner be denied bond, Respondents must file a status report providing a detailed explanation of the reasons for such denial "beyond simply stating that Petitioner was found to be a danger or flight risk."[4]

Petitioner received a bond hearing on June 8, 2026, in which he was represented by counsel.[5] There, the immigration judge ("IJ") determined that Petitioner had met his burden to show that he was not a danger but had failed to meet his burden to show that he was not a flight risk.[6] In that hearing, the IJ received evidence from Petitioner and Respondents, including letters from family members.[7] However, Petitioner's counsel also acknowledged that there was limited evidence regarding Petitioner's address or employment history.[8]

Relying on the lack of these materials, the IJ determined that Petitioner had failed to meet his burden to show that he was not a flight risk.[9] The IJ also considered that Petitioner had entered the United States without inspection eight years ago.[10] The IJ found that Petitioner's entry "show[ed] a prior disregard for the immigration

---

3 Doc. 9.
4 *Id.* at 1-2.
5 Doc. 14-3, at 1; Doc. 12, at 1.
6 Doc. 14-3, at 6.
7 *Id*. at 5.
8 *Id*. at 4-5.
9 *Id*. at 6.
10 *Id*.

laws," even though Petitioner's status in the United States was not of "a particularly short duration."[11] Based on the totality of the circumstances, the IJ determined that Petitioner failed to meet his burden of establishing that he was not a flight risk.[12]

Following the hearing, Petitioner submitted the instant motion to enforce the Court's prior Order, asserting that the June 8, 2026 bond hearing was constitutionally deficient and violated Petitioner's Due Process rights.[13] Accordingly, Petitioner seeks immediate release. In opposition to the instant motion, Respondents have attached an unverified transcript of the June 8, 2026 bond hearing.

## II. DISCUSSION

### A. Jurisdiction

Respondents first argue that this Court may not examine the IJ's bond determination pursuant to 8 U.S.C. § 1226(e).[14] That statute provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[15]

Despite that rather definitive language, the United States Court of Appeals for the Third Circuit has explicitly held that "[n]othing in 8 U.S.C. § 1226(e) prevents [courts] from deciding whether the immigration officials had statutory authority to

---

11 *Id.*
12 *Id.*
13 Doc. 10, at 2; Doc. 11, at 2.
14 Doc. 14, at 5-7.
15 8 U.S.C. § 1126(e).

impose mandatory detention" and that "Section 1226(e) does not limit habeas jurisdiction over constitutional claims or questions of law."[16] Stated differently, although courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, [they] may review whether the bond hearing was fundamentally unfair."[17]

Additionally, beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a "court has the inherent power to enforce its own orders."[18] Courts therefore have "continuing jurisdiction to address alleged noncompliance with [a] conditional writ of habeas corpus."[19] Here, Petitioner asserts that the bond hearing failed to comply with the Court's prior.[20] This argument falls within an exception to § 1226(e)'s bar on review of a bond determination, as the Court is not divested of jurisdiction to consider whether the bond hearing complied with the Court's own order.[21] Therefore, Respondents' jurisdictional arguments fail.

---

16 *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (quoting *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)).

17 *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

18 *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020).

19 *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citing *Phifer v. Warden,* 53 F.3d 859, 865 (7th Cir. 1995)).

20 Doc. 10, at 2; Doc. 11, at 2.

21 While Petitioner did not specifically raise fundamental unfairness, such an argument also falls within an exception to § 1226(e)'s bar.

Respondent additionally asserts that Petitioner has failed to exhaust his administrative remedies related to the bond hearing, and that, therefore, this Court should decline to review the motion.[22] As other courts have discussed, whether an individual must exhaust administrative remedies by appealing a denial of bond is an "area of unsettled law in the Third Circuit and in this District" and "there are several decisions in this district reaching conflicting conclusions about whether exhaustion is required."[23]

The Court need not determine whether exhaustion of administrative remedies is required in this matter because, even when exhaustion is necessary, courts will not enforce that requirement if exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm."[24] As it relates to an appeal of the denial of bond, futility is apparent because "'it is not at all clear that the BIA could evaluate the legality of the IJ's bond determination in relation to [a district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'"[25]

---

22 Doc. 14, at 7-10.

23 *Shonhai v. Lowe*, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026).

24 *Id.* (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).

25 *Id.* (quoting *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025)).

Additionally, to the extent that Petitioner would be required to exhaust administrative remedies, such exhaustion would not apply to this Court's review of its own order when determining if Respondents complied therewith. Accordingly, the Court has jurisdiction to consider Petitioner's motion.

**B. Merits**

Turning to the merits of Petitioner's motion, Petitioner asserts the bond hearing violated Petitioner's constitutional Due Process rights.[26] In particular, Petitioner contends that the "pro-forma" one sentence explanation for denial of bond suggests that the IJ either "rush[ed] through a denial so he could move on to the next trial," or pre-judged Petitioner's request for bond.[27] Respondents argue that the bond hearing was constitutionally adequate and individualized, and highlight the fact that the IJ's determination relied on Petitioner's lack of submitted evidence.[28]

"Throughout all phases of deportation proceedings, petitioners must be afforded due process of law."[29] The Due Process Clause guarantees individuals "an opportunity to be heard at a meaningful time and in a meaningful manner."[30] "This guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity

---

[26] Doc. 10, at 2; Doc. 11, at 2.
[27] Doc. 10, at 2; Doc. 11, at 2.
[28] Doc. 14, at 14-15.
[29] *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017).
[30] *Id.* (internal quotation marks omitted).

to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[31] "In other words, petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[32]

"[A] 'decisionmaker must actually consider the evidence and argument that a party presents,' and denies due process when it acts 'as a mere rubber-stamp.'"[33] "A bond hearing is individualized 'if it is not so arbitrary that it would offend fundamental tenets of due process[,'] 'if there is a discernible rational basis for the underlying administrative decision, and [if] the immigration judge applies the correct legal standards.'"[34] However, to the extent that Petitioner challenges how the IJ weighed the evidence presented, such an argument "challenges a discretionary determination" that the Court may not review.[35]

For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community."[36] "'Mechanistic reliance

---

31 *Id.* (brackets and internal quotation marks omitted).
32 *Id.* (internal quotation marks omitted).
33 *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 555 (D.N.J. 2026) (quoting *Abdulai v. Ashcroft*, 239 F. 3d 542, 549 (3d Cir. 2001), *superseded by statute on other grounds*).
34 *Id.* at 555 (quoting *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026)).
35 *Ghanem*, 2022 WL 574624, at *2.
36 *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

on factors that are common to all § 1226([a]) detainees will not suffice.'"[37] The Board of Immigration Appeals ("BIA") has enumerated proper and relevant considerations for an IJ to use when determining whether a noncitizen is a danger to the community or a risk of flight, including but not limited to: whether the petitioner has a fixed address, the strength of the petitioner's family ties to the United States, and the petitioner's employment history.[38]

Here, the bond hearing was sufficiently individualized to comport with due process and this Court's prior Order. The submitted transcript of the proceeding indicates that the IJ received evidence, including letters of support and photographs submitted by the parties, and heard argument on Petitioner's behalf.[39] Petitioner was represented by counsel who responded to inquiries about the lack of evidence

---

37 *Id.* (quoting *Wilkins v. Doll*, No. 1:17-CV-2354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018)).

38 *Castillo Reyes v. Rose*, 820 F. Supp. 3d 343, 352 n.7 (E.D. Pa. 2026). Specifically, these considerations are known as the *Guerra* factors, which the Ninth Circuit have held are probative of danger to the community or risk of flight. *See Martinez v. Clark*, 124 F. 4th 775, 786 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The *Guerra* factors an IJ may consider include "any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Id.* Courts in this circuit have begun to recognize that such factors may be considered by the IJ. *See Castillo Reyes*, 820 F. Supp. 3d at 352 n.7; *Avilov v. McShane*, No. 26-2431, 2026 WL 1947617, at *2 (E.D. Pa. July 6, 2026); *Nasimov v. Jamison*, No. 25-7420, 2026 WL 94615, at *6 n.10 (E.D. Pa. Jan. 13, 2026); *Bueno v. O'Neill*, No. 26-304, 2026 WL 413315, at *7 n.11 (E.D. Pa. Feb. 13, 2026).

39 Doc. 14-3, at 4-5.

regarding Petitioner's address and employment history.[40] Ultimately, along with Petitioner's undocumented entry into the United States, Petitioner's lack of such evidence led the IJ to find that Petitioner did not meet his burden to show that he was not a flight risk.[41]

While Petitioner's undocumented entry into the United States does not provide support for determining that Petitioner was a flight risk because it is a "'factor[ ] that [is] common to all § 1226[(a)] detainees,'"[42] the Court recognizes that the IJ did consider "facially valid" factors for risk of flight; specifically, the IJ considered Petitioner's lack of prior fixed address history and lack of employment information.[43] The IJ also properly referenced the Petitioner's eight year presence in the United States as favorable evidence.[44] Therefore, the IJ appeared to weigh the evidence submitted and come to an individualized determination for Petitioner in compliance with the Court's prior Order.

Moreover, the proceeding was fundamentally fair. Petitioner was represented by counsel who presented evidence and argument, which the IJ received and

---

40 *Id*.

41 *Id*. at 6.

42 *See Mujica-Marquez v. Hoover*, 4:26-CV-00623, 2026 WL 1483740, at *4 (M.D. Pa. May 27, 2026) (Brann, J.) (quoting *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020)). The court in *Santos* found similarly that the existence of a removal order is a "'mechanistic factor' common to virtually all immigration detainees" and that such a consideration could not alone support a finding of risk of flight. *Santos*, 2020 WL 4530728, at *4.

43 Doc. 14-3, at 6.

44 *Id*.

appeared to consider in its determination.[45] Furthermore, Petitioner does not assert, nor does the Court find independently, that the IJ applied incorrect legal standards to the situation. As such, this hearing was not so procedurally deficient as to be fundamentally unfair. Although Petitioner may have preferred further elaboration, the brevity of the IJ's written order does not, without more, bear on whether Petitioner was afforded "an opportunity to be heard at a meaningful time and in a meaningful manner."[46]

While the Court may disagree with the IJ's ultimate determination that Petitioner had not met his burden of proof, such is not the question before the Court today.[47] It is well established that "this Court lacks the authority to 'reweigh the evidence' presented at the bond hearing."[48] Instead, for the instant motion, the Court may only determine whether Petitioner received a sufficiently individualized bond hearing to comply with the Court's prior Order and fundamental notions of fairness. Having so found that Petitioner's hearing was individualized to Petitioner's submissions and was not fundamentally unfair, Petitioner's motion to enforce the judgment is denied.

---

45 *Id*.

46 *Serrano-Alberto*, 859 F.3d at 213 (internal quotation marks omitted).

47 *Ghanem*, 2022 WL 574624, at *3 ("[J]ust because there are disagreements about the outcome of the bond hearing . . . does not mean that the IJ violated due process in conducting the bond hearing.").

48 *Collado Nunez v. Oddo*, No. 25-CV-143J, 2026 WL 1170973, at *9 (W.D. Pa. Apr. 30, 2026) (quoting *Ghanem*, 2022 WL 574624, at *2, 3.).

## III. CONCLUSION

Petitioner's motion to enforce the Court's May 27, 2026 Order is denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge